Thank you, Your Honor. May it please the Court, Jennifer Stevie on behalf of Appellants. We are back before this Court only three years since this Court heard argument in N. Ray Cotter in which this Court held that the Price-Anderson Act creates a federal cause of action. This framework should dictate the holding here that federal nuclear safety regulations preempt state standards of care as a matter of law in a public liability action under the Price-Anderson Act. Congress did something extraordinary in the Act. It enacted an extraordinary federal framework for nuclear incident litigation, and it did so at an extraordinary historical moment. But it anticipated there would be state court jurisdiction in actions, right? And state law applied? Not state court jurisdiction, Your Honor. When it was originally enacted, yes, but not after the 1988 amendments, which were critical and transformed the landscape of the Price-Anderson Act, as this Court acknowledged in N. Ray Cotter. But address the rest of the question as a reference to state law. State law is okay if it doesn't conflict, right? State law is absolutely acceptable if it does not conflict with the Price-Anderson Act. Yes, Your Honor. But that's not what that, I assume you're talking about 2014, I think it's II, or it's referred to as HH, but I think we know what we're talking about. That's not what that says. It says such section, which refers to Section 2210, right? And that's what the District Court found. So, I mean, this for me is the case, right? I mean, how do you help me get around that or interpret that provision? Because on its face, the District Court reads that correctly, I think. Your Honor, and we don't disagree that the isolated phrase, such section, does refer back to Section 2210. There's no dispute about that. It's the rule of the last antecedent. That's fine. The proper interpretation, though, has to follow Guyer, which says that an express preemption provision doesn't end the preemption analysis, necessarily. And you have to apply the Supreme Court's holding in Medtronic, which this Court has applied, for example, in Wynnred, that says the Court errs if it only looks at the text in isolation. The text, its plainness or ambiguity, as the Supreme Court said in Robinson, must be determined by its context. And Robinson said you read the text in context, then you look at the purpose and structures of the act, and in a preemption analysis, the implementing federal regulations. So why does that give rise to a different answer? I'm sorry, Your Honor? Why does it give rise to a different answer if you look at the large context? I don't understand that. Sure, Your Honor. That's because the state law conflicts with multiple aspects of the act that are not found in Section 2210. Sometimes state law does conflict with Section 2210, but it does more than that. So, for example, Section 2021 of the Atomic Energy Act, which the Price-Anderson Act amended, states that states can only regulate nuclear material, the specific subset of nuclear material at issue here, for purposes other than protection against radiation hazards. Missouri has never reached that kind of agreement with the government. And if a state does want to enter into that type of agreement, per Section 2021D, the governor has to submit its plan to the NRC. The NRC has to approve the state's regulation of safety hazards. This court has looked at that framework and said in Northern States Power that Congress gave the NRC the exclusive power to balance the dual objectives of the act, that is to promote the private participation in the nuclear energy industry, all while protecting the public. It's the NRC's exclusive province to balance those objectives. This court further held that Congress continues to preserve that exclusive federal control over the safety aspects of nuclear energy generation. This court furthered those analyses in Holbrook and Enright-Cotter with the 1988 amendments to the act by recognizing that Congress then created substantive federal law in a federal cause of action, which incorporated state law, quote, only to the extent consistent with the act, end quote. That's from Holbrook. The Supreme Court has reached the same conclusion. Every circuit court to have decided this has reached the same conclusion, and Congress itself, when passing this provision, interpreted it the exact same way. It said that Section 2014HH creates a federal cause of action. It preserves state law rules of decision, which are derived from, not solely supplied by, derived from state law. It seems to me that a number of those circuit cases simply didn't pay sufficient attention to the text. Respectfully, Your Honor, I disagree. I think if you look at a lot of those decisions, such as O'Connor, Enright-TMI, Enright-Hanford, as just a few examples, they look at the text in context. They say, we understand what the text says, and we agree that you can't have state law be inconsistent with Section 2210. But they go further, and they say, per Medtronic, per the Supreme Court's framework in Robinson, as applied by this court in Bell and Wynred, just as examples, the courts in those circuits followed that same type of analysis and said, we can't look at what this court has deemed to be the most pervasive area of regulation the Supreme Court has ever looked at in terms of preemption. They can't look at that entire framework and allow state law to eviscerate the purposes of the Act. The 1988 amendments were created to cause efficiency, uniformity, and equity in application. After the Three Mile Island incident, there was a cadre of cases that arose in state and federal court, causing great lack of uniformity in the application of the Act. That is the exact purpose of the 1988 amendments, was to remedy that and create this uniform regulation. What do you think the word derived means? I think it means that it comes primarily from state law, Your Honor, and we don't disagree with that. We think that state law is preserved in many ways. This is the modern preemption paradigm. You can have a state law and a federal law fit together by allowing state tort law to provide the statute of limitations, which is what Hallbrook said, to provide the remedies, which is what Silkwood said and other circuits have allowed in other frameworks. You can have it dictate the relationship between the duty and breach and causation. The line that it cannot cross, according to Ward in the Seventh Circuit, is it cannot supply the standard of care because that directly intrudes on the federal government's exclusive province to regulate nuclear safety. Not all of nuclear material. This specific subset of three categories the federal government was intensely interested in for either purposes of making atomic weapons or nuclear energy. The effect of the preemption in the Price-Anderson Act is broad, but its scope is narrow. It's just these three areas of nuclear material and it's just within the safety aspects of that. States still get to regulate quite a bit when it comes to the rest. The district court's ruling below should be reversed because denying preemption of state nuclear safety standards of care as a matter of law is based on an interpretation that violates fundamental rules of statutory construction, which we've just discussed. The ruling threatens to upend the balance Congress gave the NRC the exclusive power to achieve. The ruling gives regulatory power over nuclear energy safety to juries instead of NRC. I want to just briefly remind the court that the nuclear incident that's alleged below has led to hundreds of cases. More than 500 cases were previously filed. They were resolved either through dismissal, decision, or settlement all under the federal standards of care. It isn't until this district court decision that has reversed course and caused a divergence within the Eastern District of Missouri. Now, if this court affirms that decision, it will influence the standard of care that creates divergence not just within the Eastern District, which I just mentioned, but also the holdings of the Supreme Court, this court, every other circuit to address the issue, and like I mentioned earlier, Congress itself. Based on those well-reasoned precedents, this court's preemption analysis should begin and end with the federal government's exclusive control over nuclear safety. Now, we've talked some about field preemption, but I want to say just a few more things. And that is that Congress created the federal cause of action in the 1988 amendments against the backdrop of field preemption. I've already mentioned that this court has acknowledged that the federal government's regulation in nuclear energy is perhaps the most pervasive the Supreme Court has ever looked at, but this court has held that Congress intended federal occupancy of regulations over all radiation hazards unless expressly ceded to the states. And that's the agreement states I mentioned earlier with Section 2021, which doesn't apply here. The Supreme Court has rejected the argument that you can allow states to have an indirect effect on nuclear safety. The Supreme Court did that in Pacific Gas. There is a longstanding recognition of the division of labor between federal and state regulation of nuclear material. This court and other courts and the Supreme Court have applied it in many different contexts. We have seen this division where there's federal preemption of the standards of care, but it coexists with state remedies, and we have medical devices, vehicle safety, aviation safety, railroad, and so forth. There can perhaps be nothing more important than the federal government's control over this specific nuclear material at issue. Congress gave the NRC exclusive authority to promulgate those regulations and the NRC did just that. It set regulations for the exposure limits for the public, which might be exposed off-site, which is what is at issue in this case. It set dosage limits and so forth. A state should not impose a different whole-body dose limit, release limit, or other standard on a handler of nuclear material when it is squarely within the province of the federal government to do so. The Third, Seventh, and Eleventh Circuits, among others, have followed this same logic. I want to turn from field preemption to the express preemption provision, which we have discussed mostly. One thing I want to add is that Section 2210 codifies the heart of the Price-Anderson Act. These cases address the same legal issue here on comparable facts in well-reasoned and thorough opinions, which brings me to my final point, which is legislative intent. As I mentioned earlier, and I know this Court knows, Congress had two purposes for the Act, which are sometimes competing to protect the public and encourage private participation. It violates the rules of statutory construction to interpret an isolated phrase in Section 2014 H.H. now I.I. in a way that should set the standard of care because Congress gave the NRC, not states, the power to govern that. In Section 2201, Congress gave the NRC power to regulate this specific subset of nuclear material as it may deem necessary or desirable to achieve the purposes of the Act. This Court has already recognized the critical role of federal agency regulation in light of those purposes. This Court said in Northern States Power that it is only through the application and enforcement of uniform standards promulgated by a national agency that the Act's objectives will be achieved. Other circuits have followed that same reasoning. I also want to address the point that plaintiffs have raised that these federal regulations, they do not simply govern Cotter. If the defendants are to be held liable, any of them, it is due to their possession or use of the particular nuclear material at issue. This Court can reject the artificial distinction between licensees and non-licensees that it already did in N. Ray Cotter. A Price-Anderson Act claim is the Price-Anderson Act claim based on the subject matter, on the nature of the claim, not the identity of the defendants. If the defendants are handling source or byproduct nuclear material, then either they are general or specific licensees. They are governed by the federal regulations. It is only through uniform application of those regulations that the objectives can be achieved. The District of Columbia has a different view on unpredictability in application of the Act. It attempts to regulate different types of entities under different standards, contrary to what the NRC has determined they should be governed by. Instead, this Court should read Section 2014 I.I. in harmony with its purposes in Section 2012, with its dual state regulation of nuclear safety in Section 2021, with its authorization to the NRC alone to regulate this field in Section 2201. We respectfully request reversal of the District Court decision below. We request that this Court hold that federal nuclear safety regulations set the exclusive standard of care in a Price-Anderson Act, and we would request that the Court instruct the District Court to dismiss this complaint for failure to state a claim under the federal standards of care. If this Court has no further questions, I will reserve the remaining of my time for rebuttal. You may. Thank you, Your Honor. Mr. Cobb. May it please the Court. My name is Victor Cobb, and I am here on behalf of Appellees Nikki Mazzocchio and Angela Krause, who allege a public liability action against appellants whose conduct has exposed them to harmful radioactive wastes and has caused them to develop cancer. The question presented to this Court is whether federal dose regulations provide the exclusive standard of care in a public liability action. The District Court properly determined that the appellants read into the PAA a blanket standard of care that is not based on any provision of the PAA, it conflicts with the plain language of the PAA, and it contradicts congressional intent. Let me interrupt you. You know we have a prior panel rule, if a prior panel has ruled on something, that it binds our panel until the in-bank Court speaks. In the Northern States case, I know it was, seems to some of us like a short time ago, but some time ago, says the States possess no authority to regulate radiation hazards unless pursuant to the execution of an agreement surrendering federal control over the three categories authorized under 2021B. That is correct. Okay, now how can you reconcile your very strong textual argument with those words of this Court? Well, the State of Missouri cannot directly regulate in this field, but as the Supreme Court said, a direct effect on regulation, as you would see by the application of State tort law, versus direct regulation, is a consequence that Congress was willing to accept. And that is what the Supreme Court says in Silkwood. You distinguish between a direct regulation by the State, say a statute, or their own set of regulations, versus the indirect effect that the application of State tort law might have. And this is what Congress envisioned when they said that the substantive rules are derived from State law. This is something that they confirmed that they were willing to accept this consequence, and this indirect effect on, you know, the regulatory effect of the application of State tort law. And later, doubling down, the Court basically adopts legislative history. This Court basically says the Commission has exclusive authority to regulate for protection against radiation hazards until such time as the State enters into an agreement with the Commission. Now, tell me how we can get around such plain language? Well, it is correct. The State cannot, if they do not have an agreement, create their own regulations. But State common law, tort law, can have an, does have an indirect effect and can still apply. And this is what Silkwood says. They looked at the same legislative history of the PAA, and they said that was a consequence that they were willing to accept. And you need to distinguish between the field preemption that comes from Pacific Gas, again, direct regulation by a State. And what Silkwood Court found, which reaffirmed that, but then using strict liability, found that punitive damages pursuant to State law were permissible. And that was okay because they realized that that was a consequence that Congress was willing to accept. Even though they do not want the States directly regulating unless there is an agreement. That is correct. So how do you get around that to answer your question is you distinguish between the direct regulation versus the indirect regulation from State tort law. And pardon me. And then Congress changed that and said no punitive damages. Well they said no punitive damages. They qualified it. And they said only when the United States is on the hook to pay. It had no effect in Silkwood. But anyway, they did not change anything else. It was just they responded to that directly. It was a very limited response to Silkwood. You are correct. Not a general one in any way. Just specific. I agree with you. Do you think the State can go either way from the Federal? They can go up or down in the amount of dosage? The State can't do anything. It's the application of State tort law. Well, I'm sorry. Courts are part of the State Council and for many purposes of the U.S. Can the State go up and down? The State could say it has to be .10. So what happens with the application of State tort law is it works in conjunction with Federal regulations. The Federal regulations, it's evidence that the standard of care has been met. But it's not conclusive or dispositive. State law duties work in conjunction. So in a case like this where plaintiffs could prove that exposure to the radiation caused their cancer. But just because a specific duty, a Federal duty, was not violated, they're not allowed to recover. Even though they can prove causation. That makes no sense. It's contrary to the purpose of the Price-Anderson Act, which is to protect the public. So the Federal regulations, dosage regulations, will be introduced as evidence during the case, is that it? Yes. Or the jury will be instructed on the effect of the State law effect of a violation of a regulation. Is that the way it would work? It could be evidence of compliance with the standard of care, but it is not dispositive. But I'm asking you mechanically, how does that work? Does the trial judge instruct the jury that violation of a regulation, State or Federal, is evidence of negligence per se or whatever? A violation would be evidence of negligence. I know that. I'm sorry. But a non-violation, it would play into the analysis, but it would not be dispositive. In other words, duties that would arise under State tort law work in conjunction in addition to Federal standards. And in some instances, to answer your question, it may be more restrictive. But as the Supreme Court says in Silkwood, that's a consequence that Congress was willing to accept, which in 1988, they confirmed when they said that it is derived from State law, and less inconsistent with the Section of 2210, which appellants say that it's the Act as a whole. Well, the Act as a whole is Section 2210, with relevant definitions in Section 2014. That is the Price Anderson Act. What they're really saying is that the Atomic Energy Act preempts, which has no express preemption provision. I thought there was a confusion there between the Atomic Energy Act and the PAA. I think you're right. What the appellants are here asking this court to do is reverse the district court opinion and do what both Congress and the NRC have both refused to do, to preclude a finding of liability where a defendant complies with Federal dosage regulations. So where did the other circuits go wrong? I mean, we'd be the only ones here, right? Are there four on the other side? There's three or four, and it's hard to tell because some of them directly address this issue, where it is what is the standard of care under a public liability action. Some address the preemption of independently pledged State law cause of action with a public liability action. So it is either three or four, and it's hard to tell. But they go wrong in two major respects. One is they rely on primarily Pacific Gas, which is an implied preemption case that predates the language that is to be interpreted. Moreover, it misinterprets what Silkwood says, which comes after Pacific Gas. Silkwood clarifies and says that, yes, while the direct regulation is not allowed, the application of State law of negligence and strict liability, while it may be regulatory in some sense, that it was something that Congress was willing to accept. And Silkwood makes that very clear. And it qualifies the field that is proposed and established by Pacific Gas. So for those two reasons— Run that by me again. You said qualifies the field? Yes, so the field in Pacific Gas is that States cannot regulate. And what Silkwood points out is that they cannot directly regulate via statute. But the application of State tort law, while it may have some impact on it, that is something that Congress was okay with. And Congress reaffirmed that when they drafted the definition, HH, now II, and referred back to State law. If I remember from your brief, you have cases—you don't have cases holding to the contrary, right? You don't have a circuit court case that directly supports. There's some language, I think, in Cook and other cases that lends support. But we'd be the first one to adopt as a holding what you're asking us to do. The cases that are directly on point, yes. Okay. But you point to the Cook decision, which, you know, he looks at this preemption provision. And this is Gorsuch. And he says that it provides a modest form of conflict preemption. State law continues to govern unless it is inconsistent with the provision of Section 2210. The appellants have had numerous opportunities to point to a provision of Section 2210. They claim it's inconsistent with plaintiff's State law theories of liability. And they've failed to do so. That should be the end of the analysis. Well, a more direct question, where do you think this court went wrong in northern states? Because every time I turn the page, I find another statement. And I'm quoting these to you, as you may know. A dual system of regulation for control exerted with the state and federal over the level of radioactive affluence discharge would create an obstacle to the accomplishment and execution of the full purposes and objectives of Congress. And that's before they do several paragraphs about this is all for the Atomic Energy Commission. Why did we go so wrong in this case? So, again, northern states also predates the language at issue here. Yeah, but we have a prior panel rule where it's the prior panel of this court. But make your argument that the law has changed. So, northern states, again, like Pacific Gas, is direct regulation. It is a statute. It is direct regulation by a state passing its own statute. And the argument in Silkwood to the Supreme Court was based on northern states. And Silkwood rejected it. They rejected the reasoning in northern states' power. And they distinguished between direct regulation by a state. This is a very honest question. They didn't mention our opinion in Silkwood, did they? They did not. Yeah, I didn't think so. If you look at the briefing, the argument raised there was based on and if you look at the Tenth Circuit opinion, the Tenth Circuit opinion, which was reversed, was based on northern states' power. The source of the decision in the Tenth Circuit, which the Supreme Court reversed, was northern states' power. Thank you. So, there's three points, and I'm running out of time here. These are great questions I'll have, but I'd like to get to these if possible. In one we've discussed, the plain meaning of the PAA's text confirms that the district court got it right. And that's the best indication of congressional intent. The district court is consistent with the history of the PAA and its cardinal attribute of minimal interference with state law. And third, it's consistent with the purpose of the PAA. Going back to the northern states' power, the purpose is argument. The purpose of the PAA is twofold. Protect the public and encourage private industry and the nuclear industry. And what appellants do is they confuse how it encourages private participation. It encourages private participation by providing government indemnification and putting a cap on the amount of liability. It caps liability. It does not limit how liability is established. And 2014 says that liability is established by state law. Yes, the PAA would cap the amount of liability, but it would not cap how liability is established in the first place. And with respect to protecting the public, I'll point you to an NRC decision. A petition was filed with them to do exactly what appellants are asking here. To say that there must be a violation of the regulations before there is a finding of negligence. And they denied the petition. And they said that it has never been the intent that the regulations provide an absolutely safe level below which no injury could occur. So that means that, as here, plaintiffs could prove that their injuries were caused by their exposure to this radiation, but would have no redress simply because some specific federal duty was not violated. That eviscerates the purpose of the PAA, which is to protect the public. In the NRC, they said this themselves, that there is no safe level below which you can presume no injury will occur. It eliminates the whole first purpose. Yes, there are dual purposes, and as I said, they're both satisfied by the district court's opinion. And with respect to the history of the PAA, as the NRC did, Congress was also given an opportunity to establish federal regulations as the exclusive standard of care. During the 1980 amendments, there was a proposed amendment to, and this was in response to, the Missouri case that established a strict liability. To say there can be no negligence unless these are violated. And Congress said, they denied this proposed amendment, and they said that it is contrary to the cardinal attribute of the PAA, which is minimal interference with state law. And they said this is a principle which has been embodied in the PAA. Congress didn't enact this into law, did they? This is in a House report that accompanied the 1980 amendments. But it does show that they addressed this issue while drafting them, and they rejected it. And what they ended up with was the language of 2014HH, which is clear as day. It says, substantive rules derived from state law. And if you look at their brief, they propose that, in this case, the statute of limitations could come from state law. That is all they came up with. Well, in Missouri, statute of limitations is a procedural law. So, in the end, there would be nothing coming from state law here. State law would be eviscerated. It would read out the language. Well, counsel, all the rules of the Supreme Court of Missouri are law. You may know by Article V of the Missouri Constitution. Correct. So I think that is a, just focus on the standard of care. You believe that the standard of care, the state can, you can just give it to a jury. You allow this evidence, the federal amount. But you believe you just give it to a jury for them to find it, right? I believe that the jury does make that decision, and that is what Congress said by leaving it to state law. And it is not just a jury. There is the gatekeeping function by district courts with Daubert. And so it is not just a jury out on a limb making wild decisions. There are limits to what that is. That is what they are told the standard of care is, right? We are talking in this case about the standard of care, right? The standard of care is to not allow the release of radioactive materials. That is negligence or something, right? It is standard negligence, or in Missouri, it is strict liability. Because it is the Mallinckrodt v. Bennett case. It says that the handling of waste like this is subject to strict liability. So strict liability, your answer earlier to Judge Arnold, how would you introduce evidence of the dosage when you are dealing with a strict liability case? Well, the theories of liability that plaintiffs allege, it is strict liability in addition to negligence. I was addressing a negligence theory of liability there. But you say under Missouri state law it would be strict liability? It would, based on Mallinckrodt v. Bennett. Then the dosage cannot work. It does not have any influence in strict liability, right? Correct. Okay. And that is what state law says, and that is what Congress directed with 2014. So now I understand what some of the other circuits were saying. Go ahead.  So I have got a short amount of time here, and I just want to leave you with, you know, the thought here is, you know, in the first time we were in front of this court, the plain language of the Act carried the day. And it should carry the day again here. And if you look at the plain language, you have to show that state law theories are inconsistent with the provision of Section 2210. Appellants have failed to do that. The district court got it right. And a lot of the discussions we are having here are dealing with implied preemption principles. The district court never even reached that decision. It was alluded to, and he said he will get to it, but it was never addressed. The plaintiffs here who, if they can prove that their exposure caused them to get cancer, should be allowed to recover. And they should not be precluded simply based on some specific duty from the federal regulations that requires a specific amount of a release. The simple fact that their cancer was caused by exposure to radiation released by the defendants should allow them to seek redress. Thank you. Thank you, counsel, for the argument. Ms. Stevie. Thank you, Your Honor. You cannot square plaintiff's interpretation of Section 2014-II with this court's pronouncements in Northern States power. You can't square it. You heard the answer to that. They say that the Tenth Circuit relied on Northern States and the Supreme Court rejected the result. Your Honor, this court has already rejected Silkwood as a pre-1988 case that doesn't address the amendments. But there are more ways that it can be distinguished. Silkwood addressed only the indirect effect of state tort law remedies. So we acknowledge that even if you set aside the 1980 amendments, you could have the remedies apply along with the standard of care. It's a quintessential modern preemption paradigm to allow state tort remedies but not standards of care when there is field preemption. And I don't think there can be any dispute that there is field preemption in the area of nuclear safety. Judge Fenton, you read quote after quote from Northern States power. The Supreme Court has said the same in Pacific Gas. And that field preemption was already there when Congress passed the 1980 amendments. They knew that Section 2021 of the Atomic Energy Act, which the Price-Anderson Act amended, that the entire framework allowed the NRC and the NRC alone to govern nuclear safety. The state tort law— Counsel, if this case is proceeding only on the basis of strict liability theory and not negligence or negligence per se, where is there any room for any kind of dosage regulation, federal or otherwise? Your Honor, just to be clear before I answer your question, this case is not proceeding just under strict liability. But to answer your— Okay, well, that's what I was wondering. Oh, okay, yes. I mean, I know it was pleaded three different ways, but I just thought I heard counsel say the Missouri rule was strict liability. Right. I think he's invoking that to argue that there are ways in which the states should be allowed to set different standards, but they are proceeding on multiple claims that go beyond strict liability. Okay, well, you have limited time, so— Thank you, Your Honor. I also want to address the fact that the 1980 amendments can't just be set aside, that they transformed the landscape of the Price-Anderson Act. They created substantive federal law. Congress's response went far beyond just punitive damages. The Supreme Court looked at that in Estosi, and this Court looked at that in Enright-Cotter. Also, Your Honor, it's not just three circuits. At minimum, the 3rd, 5th, 7th, 9th, and 11th circuits have all concluded that it should be the regulatory standards from the NRC that apply, not state standards. This Court would be the only one to hold differently. I know that the plaintiffs invoked Cook, but by the time the case got up to the Cook 2 opinion, it wasn't a Price-Anderson Act case. The plaintiffs had disavowed it. The defendants had forfeited their preemption arguments. All of it was dicta. There's no holding of any circuit court that goes plaintiff's way. You agree, though, that Justice Gorsuch's dicta undermines your argument? I mean, it's not a holding, right? Right, it is, but, Your Honor, as to the essence of it, he's looking at it at an isolated textual reading. He's stopping short of the rest of the statutory framework and the implementing regulatory framework, which the Supreme Court said in Medtronic is not the proper preemption analysis, and this Court said in Wynnred was error. The last thing I'll say in my remaining time is that Congress has not addressed this before. They looked at a radiopharmaceuticals issue, which has nothing to do with this, and this Court's word is the last word when it comes to field preemption. We respectfully renew our request for reversal. Thank you. We thank both counsel for the argument. Case number 23-3709 is submitted for decision by the court. Ms. Grupe. Case number 23-3342, United States v. Keegan Wiley.